UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEREDITH METZLER, DIANA
BELICH, BLEAN TAYE, and
STEVEN BRUNO, individually
and on behalf of all others
similarly situated,

    Plaintiffs,

v.                                     Case No. 8:19-cv-2289-T-33CPT

MEDICAL MANAGEMENT INTERNATIONAL,
INC., A CARING DOCTOR (MINNESOTA),
P.A., A CARING DOCTOR (TEXAS),
P.C., A CARING DOCTOR (NEW JERSEY),
P.C., XYZ CORPORATIONS 1-45, all
collectively d/b/a Banfield
Pet Hospital,

    Defendants.
_____/

### ORDER

This matter is before the Court on consideration of Plaintiffs' Motion to Conditionally Certify an FLSA Collective Action (Doc. # 54), filed on January 21, 2020. Defendants filed a response in opposition on February 11, 2020 (Doc. # 63) and Plaintiffs filed a reply on February 18, 2020. (Doc. # 64). Employing the lenient conditional certification standard and declining to review the merits of the underlying FLSA claims, the Court determines that a class of similarly situated employees would be interested in

joining a collective action. Therefore, the Motion is granted as set forth herein.

**I.   Background**

On September 13, 2019, Plaintiffs Meredith Metzler, Diana Belich, Blean Taye, and Steven Bruno initiated this action against Defendant Medical Management International, Inc., doing business as Banfield Pet Hospital (Banfield), alleging violations of the Fair Labor Standards Act (FLSA) and various state laws. (Doc. # 1). Thus far, ten people have filed consent forms indicating their desire to opt-in to this action. (Doc. # 6).

Pursuant to a Court Order, the parties engaged in limited discovery and participated in a mediation on January 9, 2020, which resulted in an impasse. (Doc. ## 18, 31, 35, 36, 40, 46, 47). The parties also participated in a scheduling conference before the Court on January 22, 2020. (Doc. # 58).

On January 7, 2020, Plaintiffs filed an amended complaint against Banfield.[1] (Doc. # 45). According to the amended complaint, Plaintiffs all worked for Banfield as

---

[1] The amended complaint added several defendants who, according to Plaintiffs, are affiliated or subsidiary entities to Medical Management International, Inc., who all collectively do business as Banfield Pet Hospital. (Doc. # 45 at 4-6).

2

Practice Managers and claim that, until October 2016, Banfield misclassified them and other similarly situated Practice Managers as exempt from overtime wages, including during their training period. (Id. at 2, 3-4). They allege that Banfield was aware that Plaintiffs and other Practice Managers consistently worked more than 40 hours per week, yet failed to pay them overtime compensation. (Id. at 8). They allege that their primary job duties are "non-exempt in nature" and included answering phones, scheduling appointments, and cleaning examination rooms between patients. (Id.). They also allege that Banfield willfully engaged in a company-wide policy, pattern, or practice of violating the FLSA. (Id. at 10). Accordingly, Plaintiffs bring this collective action under the FLSA to recover compensation for unpaid overtime wages. (Id. at 9-11, 17-20).

While the amended complaint states that Plaintiffs also purport to bring this lawsuit as a class action under Federal Rule of Civil Procedure 23, (Id. at 1, 7-8, 11-17), the instant motion pertains only to whether this case should be conditionally certified under the FLSA. Plaintiffs seek a Court order conditionally certifying a collective of:

> All similarly situated salaried, exempt-classified Practice Managers ("PMs") who worked for Defendant Medical Management International, Inc., and/or any

3

>of its subsidiaries doing business as Banfield Pet Hospital (collectively "Banfield" or "Defendants"), at any location in the United States from June 12, 2015 to November 2016 (the "FLSA Collective"), including during the 4 to 8 week PM training period, pursuant to the Fair Labor Standard Act ("FLSA").

(Doc. # 54 at 2).[2]

## II. Legal Standard

The FLSA expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")

Pursuant to Section 216(b), certification of collective actions in FLSA cases is based on a theory of judicial economy

---

[2] In the amended complaint, Plaintiffs identified two proposed FLSA collectives, but now appear to seek conditional certification of one consolidated FLSA collective action. (Doc. # 45 at 7; Doc. # 54 at 2).

4

by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged" activity. Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).

In making collective action certification determinations under the FLSA, courts typically follow a two-tiered approach:

> The first determination is made at the so-called notice stage. At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt in. The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for decertification by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)(internal citations and quotation marks omitted).

At the notice stage, the Court should initially determine whether there are other employees who desire to opt

into the action and whether the employees who desire to opt in are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218. The plaintiffs bear the burden of showing a reasonable basis for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." Morgan, 551 F.3d at 1261 (internal citations omitted). Essentially, at this stage of the proceedings, the Court must determine whether there are other Banfield Practice Managers who are similarly situated and desire to opt in. Dybach, 942 F.2d at 1567-68.

## III. Analysis

### A. Whether other employees desire to opt-in

First, the Court must "satisfy itself that there are other employees . . . who desire to 'opt-in.'" Dybach, 942 F.2d at 1567-68. The onus is on the plaintiff to demonstrate a reasonable basis for the assertion that other employees desire to opt-in. Leo v. Sarasota Cty. Sch. Bd., No. 8:16-cv-3190-T-30TGW, 2017 WL 477721, at *2 (M.D. Fla. Feb. 6,

6

2017). "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." Hart v. JPMorgan Chase Bank, N.A., No. 8:12-cv-470-T-27TBM, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012).

Here, Plaintiffs have met their light burden to establish a reasonable basis that other employees desire to opt-in to this action. Ten other individuals have filed notices of their consent to opt into this litigation. (Doc. # 6). The four named Plaintiffs and ten opt-in Plaintiffs have all filed declarations in support of the Motion. (Doc. ## 54-5 through 54-18). The declarations establish that all 14 Plaintiffs have worked as Practice Managers for Banfield in more than 30 locations across eight states. (Id.).

This Court is mindful that "there is no magic number requirement for the notice stage," and that courts will conditionally certify FLSA collectives even with relatively few plaintiffs present at this stage of the litigation. Ciani v. Talk of the Town Rests., Inc., No. 8:14-cv-2197-T-33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015). Courts routinely allow conditional certification with even fewer putative plaintiffs than the 14 Plaintiffs present here. See

Id. at *2 (conditionally certifying class containing two named plaintiffs and two opt-in plaintiffs); Palma v. MetroPCS Wireless, Inc., No. 8:13-cv-698-T-33MAP, 2013 WL 6597079, at *2 (M.D. Fla. Dec. 16, 2013) (conditionally certifying a nationwide collective action based on the presence of two named plaintiffs and nine opt-in notices of employees who worked across three states); Pendlebury v. Starbucks Coffee Co., No. 04-cv-80521, 2005 WL 84500, at *2 (S.D. Fla. Jan. 3, 2005) (granting conditional certification upon consideration of four affidavits from store managers complaining of improper exemption from overtime eligibility).

Thus, Plaintiffs have established a reasonable basis that there are other Banfield Practice Managers who would desire to opt into the action.

**B.   Whether the employees are similarly situated**

As explained by the Eleventh Circuit, a plaintiff's burden of showing a "reasonable basis" for the claim that similarly situated employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." Morgan, 551 F.3d at 1260-61 (internal citations omitted). Nonetheless, there must be more than "only counsel's unsupported assertions that FLSA

8

violations [are] widespread and that additional plaintiffs" would come forward. Id. at 1261. For purposes of defining the "similarly situated class" under Section 216(b), the plaintiffs must show that the employees are similarly situated with respect to their job requirements and pay provisions. Id. at 1259 (citing Dybach, 942 F.2d at 1567-68).

As to the pay provisions, Plaintiffs point out that Banfield has admitted in its answer that the named Plaintiffs had been employed as Practice Managers. (Doc. # 55 at 4-5, 7). Banfield also admitted that named Plaintiffs worked more than 40 hours during at least one week and worked fewer than 40 hours in other weeks. (Id. at 10). It admitted that Practice Managers were paid in the same manner during their training and after their training. (Id. at 12).

The declarations submitted by Plaintiffs state that Banfield classified the declarant as exempt from overtime pay during his or her work as a Practice Manager, including during training, that the employee was paid a salary and was not paid overtime compensation, even though he or she regularly worked in excess of 40 hours per week. See, e.g., (Doc. # 54-5 at 2-3). The Court also notes that these declarations are consistent in pertinent part with the declarations submitted by Banfield, in which other Practice Managers stated that

9

they were classified as salaried, exempt employees until approximately October or November 2016. (Doc. # 63-4 at 5; Doc. # 63-23 at 6-7; Doc. # 63-44 at 6). Here, Plaintiffs have met their modest burden of showing that Practice Managers are similarly situated with regard to their pay provisions.

The Court turns next to whether these Banfield Practice Managers are similarly situated with respect to their job requirements. In the affidavits submitted in support of Plaintiffs' Motion, the employees state that they spent the majority of their total work time "doing the same manual labor and customer service tasks that the hourly paid employees performed," including answering phones, scheduling appointments, checking patients in and out, cleaning examination rules, and selling pet insurance. See, e.g., (Doc. # 54-5 at 3). According to the Plaintiffs' declarations, they all underwent similar training, despite working in hospitals across the country. See, e.g., (Id.).

Plaintiffs were aware that "[a]ll PMs performed the same or similar primary duties" and regularly worked more than 40 hours per week, based on their conversations with other Practice Managers. See, e.g., (Doc. # 54-5 at 3-4). Plaintiffs knew of the similar nature of the work performed by other Practice Managers because they were required to attend weekly

10

conference calls and quarterly meetings in which Practice Managers would discuss the work they were performing, and, based on those conversations, "all PMs spent the majority of their time performing the same duties as I did." See, e.g., (Doc. # 54-7 at 4).

Banfield denies that Practice Managers are similarly situated with respect to their job requirements, and it attaches numerous declarations in support of that assertion. Banfield argues that "[m]any factors dictate and influence how a PM will spend their time each day including, but not limited to, hospital size, [Field Director] preference and management style, associate skill set, hospital revenue, location and staffing." (Doc. # 63 at 8; Doc. # 63-9 at 6; Doc. # 63-16 at 6-7). According to Banfield, the only "commonality" that Practice Managers share is that they are the highest level of non-medical management at each hospital. (Doc. # 63 at 8). Thus, Banfield claims that an individualized assessment would be needed of the work duties done by each Practice Manager at each hospital. (Id. at 15-19).

In relevant part, the employee declarations submitted by Banfield contain averments from other Practice Managers that their "most important jobs" are managing other employees, including performance tracking, training, and setting work

11

schedules, and ensuring smooth hospital operations. See, e.g., (Doc. # 63-2 at 3-4). As one employee put it, "[t]he Practice Managers' most important job duty is to make sure they have a great team to support the doctors, clients, and pets. Practice Managers accomplish this through hiring, staffing, and managing the hospital on a day to day basis." (Doc. # 63-7 at 3). These employees claim that they rely on their discretion and judgment in carrying out their job duties. See, e.g., (Doc. # 63-9 at 5). They claim that, to the extent they do the manual labor that ought to be done by "hourly associates," such work takes up a very small percentage of their work time. See, e.g., (Doc. # 63-3 at 5).

The main thrust of Banfield's response in opposition, and the affidavits it filed in support thereof, is that Practice Managers "never take off their manager hat" and perform discretionary managerial tasks for most of their workday. (Doc. # 63 at 10). But whether Practice Managers are eligible or ineligible for overtime compensation because of the managerial exemption contained in the FLSA is a question going directly to the merits of this case. See 29 C.F.R. § 541.100(a) (containing the "executive/managerial exemption" from overtime requirements). "An evaluation on the merits of the managerial exemption is not appropriate at this juncture;

12

rather, the relevant question is whether the members of the class are sufficiently similar in the essential criteria needed to uphold or reject the exemption, thereby warranting collective treatment." Pendlebury v. Starbucks Coffee Co., 518 F. Supp. 2d 1345, 1353 (S.D. Fla. 2007); see also Roberson v. Rest. Delivery Developers, LLC, No. 8:17-cv-769-T-33MAP, 2017 WL 4124862, at *3 (M.D. Fla. Sept. 18, 2017) ("[A]t the conditional certification stage, the Court must not review the merits of the case."). As another district court within this Circuit has explained:

> Defendant attempts to defeat conditional certification with a plethora of declarations from General Managers and Assistant Managers, who assert that Assistant Managers spent (or were supposed to spend) most of their time performing exempt work. However, Defendant's arguments essentially ask the Court to employ the stricter "decertification" standard at the conditional certification stage; something this Court is not willing to do. The factual issues raised by Defendant speak to the ultimate merits of Plaintiffs case and are inappropriate for resolution at the lenient, "notice" stage.

Florence v. Deli Mgmt., Inc., No. 1:18-cv-4303-SCJ, 2019 WL 964316, at *3 (N.D. Ga. Jan. 10, 2019). The Court agrees and will not address the merits issues that Banfield has set forth.

Moreover, to the extent Banfield argues that individual variations in job duties preclude conditional certification,

such evidence is more appropriately considered at the second stage of the conditional certification analysis, once discovery is largely complete. See Vondriska v. Premier Mortg. Funding, Inc., 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific job duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage."); Ciani, 2015 WL 226013, at *4 (certifying class in spite of employer affidavits "pinpointing variations in individual titles, schedules, and practices"); Lytle v. Lowe's Home Centers, Inc., No. 8:12-cv-1848-T-33TBM, 2014 WL 103463, at *4 (M.D. Fla. Jan. 10, 2014) (same); see also Morgan, 551 F.3d at 1261-62 (explaining that the various defenses available to defendants that appear to be individual as to each plaintiff should be addressed at the second stage of conditional certification). The Court is mindful that, at the notice stage, Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members. Hipp, 252 F.3d at 1217.

The evidence offered by Banfield exceeds the Court's limited inquiry at this notice stage of the conditional certification process. Ciani, 2015 WL 226013, at *3-4; see also Simpkins v. Pulte Home Corp., No. 6:08-cv-130-Orl-19DAB,

14

2008 WL 3927275, at *14-15 (M.D. Fla. Aug. 21, 2008) (noting that the "mass of evidence" presented by defendant in opposition to conditional certification, including evidence about the purported collective members' varying types of work projects, varying amounts of discretion, and flexible hours, "goes far beyond the scope of this Court's review at the first stage of the certification process"). Therefore, while this Court has considered Banfield's declarations, it is not convinced by them. See Creely v. HCR Manorcare, Inc., 789 F. Supp. 2d 819, 839 (N.D. Ohio 2011) ("[T]his Court is not swayed by [defendant's] submission of thirty-five 'happy camper' affidavits . . . . [T]he Court's function at this stage of conditional certification is not to perform a detailed review of individual facts from employees hand-picked by [defendant]. Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs.").

The Court finds that Plaintiffs have met their fairly lenient burden of showing that there are similarly situated Practice Managers who wish to opt into this litigation.

### C. Banfield's Objections to the Proposed Notice

Plaintiffs have attached a proposed notice to be sent out to putative members of the collective action. (Doc. # 54-2).

Court-authorized notice in a class action context helps to prevent "misleading communications" and ensures that the notice is "timely, accurate, and informative." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989). "[T]he notice to the class should not appear to be weighted in favor of one side or the other." Palma, 2014 WL 235478, at *1. "[I]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffmann–La Roche, 493 U.S. at 174.

Banfield takes issue with two aspects of the proposed notice. (Doc. # 63 at 24-25). First, it argues that the content of the proposed notice is insufficient because it fails to advise putative collective action members of potential ramifications of opting in. The Court agrees that the proposed notice fails to advise recipients of the full extent of their potential involvement in the case. For example, it does not inform recipients that (1) if they opt

16

in, they might have to appear for trial or otherwise be called to physically appear in the Middle District of Florida, (2) they may be obligated to participate in discovery, or (3) Banfield could try to recover its costs from potential class members if the Plaintiffs' lawsuit is unsuccessful. See Ciani, 2015 WL 226013, at *5; Czopek v. TBC Retail Grp., Inc., No. 8:14-cv-675-T-36TBM, 2015 WL 4716230, at *11 (M.D. Fla. Aug. 7, 2015). Therefore, Plaintiffs are directed to revise the proposed notice in conformance with this Order and submit it to the Court for approval within 7 days of the date of this Order.

Second, Banfield takes issue with Plaintiffs' proposal that potential collective action members receive the notices via mail, email, text message, and a website. The Court determines that it is appropriate to furnish notice via mail and email. See Roberson, 2017 WL 4124862, at *4 (authorizing notice via U.S. Mail and email). The Court, however, will not allow notice via text message. Other district courts within this Circuit have not allowed notice to be sent via text message because it is unnecessary and potentially costly for recipients. See Gibbs v. MLK Express Servs., LLC, No. 2:18-cv-434FTM38MRM, 2019 WL 2635746, at *10 (M.D. Fla. June 27, 2019); Sellers v. Safe Software, Inc., No. 1:17-CV-03614-ELR,

17

2018 WL 5631106, at *5 (N.D. Ga. May 25, 2018). As for posting notice on a website, the request is denied without prejudice as premature. As Banfield has suggested, if Plaintiffs at a later date show that Banfield has failed to cooperate in the collective action process, it may petition the Court to post notice on a website. See Ciani, 2015 WL 226013, at *6.

The Court does not approve the sending of follow-up or reminder communications to potential opt-in plaintiffs. See Roberson, 2017 WL 4124862, at *4; see also Palma, 2014 WL 235478, at *3 ("[T]he Court determines that it is not necessary to send any class members 'reminder post cards.' Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant.").

In order to facilitate notice, Banfield is directed to produce in an electronic or computer-readable format the full name, address(es), and email address(es) (including personal email addresses to the extent available) for each member of the FLSA Collective within 14 days of the date of this Order. Plaintiffs will then have an additional 14 days to disseminate the notice, amended and approved as contemplated in this Order, to all potential collective action members. Plaintiffs represent that they seek a 60-day notice period (Doc. # 54 at 26), and Banfield has not objected.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiffs' Motion to Conditionally Certify an FLSA Collective Action (Doc. # 54) is **GRANTED.**

(2) Plaintiffs are directed to revise the proposed notice in conformance with this Order and submit it to the Court for approval within 7 days of the date of this Order.

(3) Defendant is directed to produce to Plaintiffs, within 14 days of the date of this Order, the information concerning potential opt-in plaintiffs as described herein.

(4) The Court approves dissemination of class notice via U.S. Mail and email. The Court rejects Plaintiffs' proposal of sending reminder notices.

(5) Plaintiffs' counsel shall be responsible for sending the Court-approved notice to potential opt-in plaintiffs within 14 days of receipt of the information from Defendant.

(6) Plaintiffs shall allow each individual up to 60 days from the date of mailing in which to return an opt-in consent form.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of March, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE